UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA, : <br> ex rel., KIMBERLY WESTERKAMP : <br> and THERESA HILL, on behalf of : <br> the federal government, : <br> : <br> Relators, : <br> : <br> v. : <br> : <br> UNITED ENERGY WORKERS : <br> HEALTHCARE CORPORATION : <br> : <br> Defendant. : | Case No. 1:* 22 cv-240 <br><br> Judge <br><br> **COMPLAINT AND JURY DEMAND** |

## PRELIMINARY STATEMENT

1. Plaintiffs Kim Westerkamp and Theresa Hill bring this action under the qui tam provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, in the name of the United States of America against Defendant United Energy Workers Healthcare Corporation.

2. Defendant provides home health services under the Energy Employees Occupational Illness Compensation Act ("EEOICPA"), 42 U.S.C. § 7384, *et seq*, and are, in turn, reimbursed by the federal government for those services.

3. In doing so, Defendant intentionally violates EEOICPA requirements by failing to comply with state licensure requirements in many of the states where Defendant operates.

4. In providing such services and billing the federal government for them, Defendants failed to obtain all proper licensing in an effort to maximize profits and avoid accountability.

5. Defendant fraudulently takes affirmative steps to hide from states and the federal government the fact that they operate without proper licensing.

6. In violation of the FCA, Defendant submits claims for reimbursement to the federal government under the EEOICPA knowing that they do not satisfy material program requirements relating to state licensure.

## JURISDICTION AND VENUE

7. The jurisdiction of this Court is invoked pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331. This action arises under the FCA.

8. Venue with this Court is appropriate under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391 because the Defendant transacts business in the Southern District of Ohio and Defendant is an Ohio corporation.

## PARTIES

### A. Relators

#### 1. Kim Westerkamp

9. Relator Kim Westerkamp ("Westerkamp") is a resident of Ohio and a United States citizen.

10. Westerkamp worked for Defendant United Energy Workers ("UEW") as a case manager and nurse coordinator in its Cincinnati, Ohio office between February 2019 and October 2021.

11. Westerkamp was responsible for overseeing the care of more than 20 patients in the Greater Cincinnati area, including patients residing in the State of Indiana.

12. Westerkamp was, at all relevant times, a nurse licensed to provide nursing services in the State of Ohio and the State of Indiana.

#### 2. Theresa Hill

2

13. Relator Theresa Hill ("Hill") is a resident of Ohio and a United States citizen.

14. Hill worked for UEW as a case manager and nurse coordinator in its Cincinnati, Ohio office between June 2016 and October 2021.

15. Hill was responsible for overseeing the care of more than 20 patients in the Greater Cincinnati area, including patients residing in the State of Indiana.

16. Hill was, at all relevant times, a nurse licensed to provide nursing services in the State of Ohio and the State of Indiana.

17. Relators are unaware of any prior public disclosures of the same allegations or transactions in a federal criminal, civil, or administrative hearing in which the government or its agent is a party; a congressional, Government Accountability Office or other federal report, hearing, audit, or investigation; or the news media. However, to the extent any such disclosure may have occurred, Relators are each an original source of the information contained in this Complaint within the meaning of 31 U.S.C. § 3730(e)(4)(B), as they possess direct, independent knowledge of the information upon which their allegations are based.

18. Relators disclosed to the United States all material evidence and information prior to filing this Complaint, in accordance with the provisions of 31 U.S.C. § 3730(b)(2).

**B. Defendant United Energy Workers**

19. UEW operates a home health agency with at least 23 offices in at least 18 states. Defendant cares for former workers in the nuclear energy industry who receive care paid for by the Department of Labor through the EEOICPA.

20. UEW operates through one or more subsidiaries that have common ownership, common management, and are operated from a shared corporate

3

headquarters in Riverton, Wyoming, including, but not limited to, Four Corners Health Care Corporation, Clinch River Home Healthcare, Inc., Brightmore Home Care of Kentucky, LLC, and Kentucky Energy Workers Healthcare LLC.

21. UEW is an Ohio corporation with its principal place of business is located in Riverton, Wyoming.

22. To the best of Plaintiffs' knowledge, information, and belief, Defendant UEW's gross revenue exceeds $500,000 per year.

## STATEMENT OF THE CASE

23. Defendant UEW operates through home health agency locations in at least 18 states, either directly or through a subsidiary. The primary function of the locations is to provide home health nursing, home health aides, and personal care assistance to former energy workers.

24. Defendant UEW directly operates the Cincinnati, Ohio office, which cares for, or has cared for, former energy workers in the Greater Cincinnati area, including in the State of Indiana. Since the inception of that office, Defendant UEW has cared for residents in the State of Indiana despite the fact that for many years it did not possess a license to provide home health services in that state. Defendant UEW provided such services in the State of Indiana with full knowledge that it did not possess the required licensure and that it was not legally providing services in that state. Defendant UEW further submitted claims to the federal government for reimbursement for providing such services with full knowledge that such claims violated federal law and the terms of the EEOICPA.

25. Through the course of their employment and unwitting involvement in this illegal scheme, Relators became aware, through admissions by high-ranking officials of

Defendant UEW, that UEW similarly provides services without a license in several other states that are adjacent to states in which UEW maintains offices, including, but not limited to, Illinois.

## EEOICPA BACKGROUND

26. The United States Department of Labor's Office of Workers' Compensation Programs ("OWCP") administers major disability compensation programs to provide medical treatment and other assistance to eligible workers and their dependents who experienced work-related injuries or disease.

27. One such program, the EEOICPA, was enacted in 2000 to compensate and provide medical care to eligible workers who have become ill as a result of their exposure to radiation and other harmful substances while employed at federal weapons facilities or other facilities operated by contractors to the federal government.

28. The program covers, in relevant part, medically necessary "personal care services" provided by home healthcare agencies regardless of whether those services include medical services.

29. Defendants provide personal home and healthcare services to eligible employees under the EEOICPA.

30. The EEOICPA provisions are similar to Medicare provisions, which require providers to comply with Medicare regulations to request reimbursement.

31. Providers who provide services under the EEOICPA, like Defendant, must comply with the regulatory structure established by the EEOICPA and its implementing regulations, 20 C.F.R. § 30, *et seq.*

32. Under the EEOICPA, "[a] hospital or a provider of medical services or supplies may furnish appropriate services, drugs, supplies and appliances, so long as such

5

provider possesses all applicable licenses required under state law . . . ." 20 C.F.R. § 30.400(c).

33. Although this language was added to the regulations in 2019, the Department of Labor's Notice of Proposed Rulemaking made clear in 2015 that this language was added to the regulations to clarify existing, rather than create new, requirements. 80 Fed. Reg. 72296, 72299 (Nov. 18, 2015) ("[T]he Department proposes to add new language in this paragraph to explain the current qualifications that must be met before hospitals and providers of medical services or supplies may furnish appropriate services, drugs, supplies and appliances to covered employees.").

34. The Program's Procedure Manual makes clear that enrolled providers must be properly licensed. For example, it describes the process by which a qualified employee may obtain authorization for covered home healthcare by "an enrolled provider" of home health services. *See* OWCP, *Federal EEOICPA Procedure Manual*, ch. 30, p. 343 (version 5.1, Sept. 2021) (Home and Residential Health Care). The Manual defines "enrolled provider" as:

> **A licensed or credentialed provider of medical or home health care services** (whether an individual or a business entity) that has completed the OWCP enrollment process and is approved to submit bills for reimbursement of authorized services performed. Providers **enroll based upon the type of service for which they have the required licensure,** including physician, hospital, diagnostic center, HHC, DME, etc.

*Id.* at 333 (emphasis added).

35. The "Notice Regarding Home and Residential Health Care" informs employees of their eligibility to receive home and residential healthcare and that they "are free to choose **any licensed provider** of home health care services, as long as that provider completes the

6

DEEOIC enrollment process." *See* OWCP, Manual 5.1, Appendix 1, Ex. 26-2 at 3 (emphasis added).

36. To provide services under the EEOICP, providers must first enroll with the Department's OWCP or its designated bill processing agent. 20 C.F.R. § 30.700(a).

37. To enroll, providers must fill out the Form OWCP-1168. *Id.*

38. The cover letter to Form OWCP-1168 makes clear that the applicant "**must submit current licensure information with [its] enrollment application. Moreover, each provider must maintain appropriate current licensure in order to receive payments under OWCP's programs.**" Form OWCP-1168 (Rev. April 2020) (emphasis in original).[1]

39. The Program's regulations make clear that "[b]y completing and submitting this form, providers certify that they satisfy all applicable Federal and state licensure and regulatory requirements that apply to their specific provider or supplier type." 20 C.F.R. § 30.700(a) (effective Apr. 9, 2019).

40. The current regulations also clearly require a provider to "maintain documentary evidence indicating that it satisfies those requirements. The provider is also required to notify OWCP immediately if any information provided to OWCP in the enrollment process changes." *Id.*

41. Similar to home healthcare agencies, the healthcare workers who provide medical services to eligible employees must also obtain licenses and register with the relevant states as required by state law.

---

[1] *Available at* https://www.dol.gov/owcp/dfec/regs/compliance/OWCP-1168.pdf (last visited Mar. 13, 2022).

7

42. Moreover, the specific location where the services are rendered is material because reimbursement rates are dependent on the locality of the services. 20 C.F.R. §§ 30.706 and 30.707.

43. The EEOICPA also imposes requirements upon providers regarding how medical bills are to be submitted, and each bill submitted creates a certification as to compliance with all requirements of the EEOICPA program.

44. In order to receive reimbursement, a provider must itemize the professional charges on a Form OWCP-1500.[2] That form, in pertinent part, requires disclosure of the patient's address, as well as the place of service and the rendering provider's ID number.

45. "By submitting a bill and/or accepting payment, the provider signifies that the service for which payment is sought was performed as described and was necessary, appropriate and properly billed in accordance with accepted industry standards." 29 C.F.R. § 30.701(d).

46. The providers also agree "to comply with all regulations set forth in this subpart concerning the rendering of treatment and/or the process for seeking payment for medical services, including the limitation imposed on the amount to be paid for such services." *Id.*

47. In signing these forms, providers acknowledge that they "understand that any false claims, statements or documents, or concealment of a material act, may be prosecuted under applicable Federal or State laws." Form OWCP-1500.

48. The regulations make clear that a provider of medical services "shall be excluded from payment" if it has "[k]nowingly made, or caused to be made, any false

---

[2] *Available at* https://owcpmed.dol.gov/portal/resources/forms-and-references/deeoic (last visited Mar. 13, 2022).

statement or misrepresentation of a material fact in connection with a determination of the right to reimbursement under this part, or in connection with a request for payment" or if it has "[e]ngaged in conduct related to care of an employee's occupational illness or covered illness that OWCP finds to be misleading, deceptive or unfair." 20 C.F.R. § 30.715(c) and (j).

## FACTUAL BACKGROUND

49. Defendant is a home healthcare agency providing medical and companion services to current and former eligible employees in their homes through local offices around the country.

50. Defendant's various offices are overseen by local and regional management, as well as a centralized management team located in Riverton, Wyoming. The regional and centralized management team members oversee operations of Defendant UEW and its constituent organizations, regardless of which name they operate under in a particular locality.

51. Defendant identifies former energy workers who are eligible, or potentially eligible, to participate in the EEOICPA program. It then assists them with enrolling, if necessary, or if already enrolled, begins developing a plan of care.

52. Defendant utilizes case managers and nurse coordinators, who are employees, to develop a plan of care in accordance with a physician's orders. The services themselves are provided, in large part, by home health aides and other nurses, who work as independent contractors.

53. In most cases, the home health aides who provide the bulk of the services to an eligible participant are spouses, family members, or other persons closely associated with the eligible participant. In many cases, these individuals reside at the same location

9

as the eligible participant. In all cases, the home health aides provide the services billed to the federal government at the residence of the eligible participant.

54. In order to obtain reimbursement for these services, Defendant generates bills and submits them to the Department of Labor and/or its designee. The form used to submit payment requests include the participant's ID number, the medical provider's ID number, the billing code for the services provided, and the number of units provided for each billing code.

55. If the form appears to have been completed correctly, the Department of Labor pays the claim to Defendant.

56. As set forth above, the Department of Labor, the EEOICPA, and its implementing regulations require providers to comply with the licensing requirements for each individual state in which providers, including home health care agencies, operate.

57. The Department of Labor relies on the individual states to monitor compliance of home healthcare providers with applicable laws and regulations through surveys and audits.

58. In many of the states where Defendant operates, Defendant has obtained state-required licenses and enrolled with the OWCP to provide services under the EEOICPA. Upon information and belief, one or more of the constituent organizations comprising Defendant UEW accomplish this licensing and enrollment in such states.[3]

59. In those states, Defendant may hire, train, and supervise licensed/registered healthcare workers in compliance with state requirements.

---

[3] For example, at least two of the subsidiaries operate in Kentucky: Kentucky Energy Workers Healthcare LLC and Brightmore Home Care of Kentucky LLC.

60. In the remaining states where it operates, however, Defendant neither obtains the requisite state licenses nor enrolls independently to perform services in those states for the EEOICP.

61. Instead, Defendant knowingly and intentionally evades states licensing requirements and submits fraudulent claims for reimbursement under the EEOICP by purposefully concealing its lack of proper licensing and failing to report the same.

62. In late summer of 2020, Defendant began the process of opening an office Lawrenceburg, Indiana and obtaining a license to provide home health care services in the State of Indiana. To accomplish that, Defendant was required to submit an application that included, among other information, the name of the Administrator and Alternate Administrator of the Indiana office.

63. UEW designated Lori Blackburn, a nurse coordinator in the Cincinnati, Ohio office, as the Administrator for the Lawrenceburg, Indiana office.

64. UEW designated Westerkamp as the Alternate Administrator for that office.

65. At the time of the designation, Westerkamp was not aware that Defendant UEW was providing services illegally in the State of Indiana.

66. When Defendant UEW applied for a license to provide nursing and home healthcare services in the State of Indiana, it was granted a provisional license to serve no more than three patients while the application was pending.

67. As part of the application process, Defendant UEW had to submit various information to the Indiana Department of Health and had to submit to an on-site inspection from a Department of Health representative.

68. During that onsite inspection, Blackburn, the designated Administrator of the Lawrenceburg, Indiana office, disclosed the identities of only three patients that

11

Defendant UEW was treating in Indiana, and knowingly withheld the names of several other patients that Defendant UEW was treating in Indiana. Thereafter, Defendant UEW continued to provide services and bill for services for more patients than the Indiana Department of Health authorized and beyond the scope of its provisional license.

69. In early December 2020, Blackburn disclosed to Westerkamp and Hill that she had met with Chris Wright, Defendant UEW's Director of Human Resources, and others, who admitted to her that Defendant UEW was illegally providing nursing and home healthcare services in the State of Indiana.

70. In or about January 2021, Westerkamp and Hill had a conversation with Dan Pope, Defendant UEW's Regional Manager in charge of the Cincinnati, Ohio office, about Defendant UEW providing services in the State of Indiana. During that conversation, Pope admitted that Defendants were knowingly providing such services "illegally." Pope further admitted to Westerkamp and Hill that Defendants were similarly providing services in other states in violation of the law, including Illinois (from the Paducah, Kentucky office).

71. Thereafter, in February 2021, Westerkamp and Hill contacted the State of Indiana's Department of Health.

72. Hill informed the Department of Health that her employer was providing services to patients in the State of Indiana without a license and questioned whether her provision of services would jeopardize her own nursing license. The representative assured Hill that her license was not in jeopardy, but that her employer was providing such services illegally.

73. Westerkamp, concerned that she was listed as the Alternate Administrator for Defendant UEW's planned Indiana office, contacted the Indiana Department of

Health and explained that her employer was providing services in the State of Indiana without a license.

74. The Department of Health representative informed Westerkamp and Hill that, as of the time it applied for a license in the State of Indiana, Defendant UEW had been granted a provisional license allowing it to see no more than three patients. Westerkamp and Hill informed the representative that Defendant UEW was seeing more than three patients and provided names of those patients.

75. Thereafter, Westerkamp requested that Defendant UEW remove her name from the application. Defendant UEW did not do so.

76. In April 2021, Hill became aware of a letter Defendant UEW received from the Indiana Department of Health notifying the company that it was providing home health care services in the State of Indiana out of its Cincinnati, Ohio office in contravention of Indiana law and that it had initiated an investigation.

77. Ultimately, Westerkamp independently contacted the Indiana Department of Health and requested that it remove her name from the application. On or about May 20, 2021, the Indiana Department of Health removed Westerkamp's name from the application and notified Defendant UEW of the same.

78. After learning that Defendant UEW was providing services in the State of Indiana illegally, Westerkamp and Hill refused to provide services to patients in the State of Indiana.

79. Defendant UEW activity recruited potential eligible employees in the State of Indiana despite not having a license to operate in the state.

80. In these states and several others, Defendant provided home healthcare services and billed for these services without appropriate licenses.

13

81. Operating out of compliance with state licensing requirements is unlawful. It violates state health laws, as well as federal requirements under the EEOICPA.

82. Defendant's submission of claims for reimbursement under the EEOICPA for services performed in states where they did not hold valid licenses was fraudulent in violation of the False Claims Act.

83. These practices are not only fraudulent, but they also compromise the integrity of patient care and put patients in danger.

84. Defendant, through its owners and corporate officers, deliberately chose not to attempt to comply with licensing and other requirements in many states where it operates.

85. In doing so, Defendant has created an unfair business advantage, wherein it has avoided the time and expense associated with regulatory compliance that its law-abiding competitors incur.

86. Defendant's refusal and failure to obtain proper licensing in all states where it operates was a business decision driven by profit rather than patient safety.

87. Defendant knew its decision not to obtain all required licenses was not compliant with the EEOICPA and governing regulations and guidance.

88. Defendant routinely and knowingly makes false statements in connection with its requests for payment, in violation of 20 C.F.R. § 30.701(d) and 20 C.F.R. § 30.715(c).

89. Defendant submits bills to the Department of Labor and/or its designee for services rendered in states where it is not licensed by falsely using provider identifications from states in which Defendant actually is licensed and/or not required to be licensed.

90. Defendant fraudulently induces the Department of Labor to pay for services using the Form OWCP-1500, which simply show (1) an approved program beneficiary and an (2) approved provider, albeit a provider not licensed in the state in which the services were provided.

## CAUSES OF ACTION

### Count I – False Claims Act – 31 U.S.C. § 3729(a)(1)(A)

91. Relators incorporate the allegations in the preceding paragraphs as alleged herein.

92. The FCA is intended to be applied broadly to protect government funds from fraudulent claims.

93. The FCA permits citizens to bring claims on behalf of the government to enforce its provisions.

94. Defendant has violated, and continues to violate, the FCA by knowingly submitting or causing the submission of claims for payment to the Department of Labor or its designee in violation of requirements that are material to the EEOICPA—particularly the requirement that Defendant be licensed and legally permitted to provide the home healthcare services for which it submits claims to the federal government.

95. Defendant fraudulently and misleadingly certifies that it will, and does, follow program requirements and the governing law despite knowing that it was not in compliance with the laws of several states requiring it to be licensed in order to provide home healthcare services.

96. Because Defendant was not/is not properly licensed in certain states, Defendant further violated the EEOICPA because it failed to maintain documentary

15

evidence indicating that it satisfies the requirements and failed to notify the OWCP of this fact, as required by the EEOICPA and its implementing regulations.

97. By engaging in the above-described actions, Defendant intended to, and did, deceive the Department of Labor.

98. These practices qualify as material violations of the conditions required to participate in and charge for services under the EEOICPA.

99. Any resulting claim for services made by Defendant is materially false.

100. Had the Department of Labor been aware of the falsity of such claims, it would not have paid for the services Defendant claims to have provided.

101. Defendant is liable for three times the amount of damages created by such false claims made to the federal government.

102. Each and every fraudulent claim is also subject to a civil fine of between five thousand, five hundred dollars and eleven thousand dollars, plus any increase as specified under the law.

### Count II – False Claims Act – 31 U.S.C. § 3729(a)(1)(B)

103. Relators incorporate the allegations in the preceding paragraphs as alleged herein.

104. The FCA imposes civil liability on any person who makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.

105. Defendant has violated, and continues to violate, the FCA by presenting such false claims to the federal government.

106. Defendant's requests for payment relied upon, and continue to rely upon, false statements and false records.

16

107. Defendant concealed and failed to disclose the fact that it was providing services in states in which it was not licensed and deliberately falsified records to do so.

108. Because Defendant was not/is not licensed in numerous states, Defendant further violated the EEOICPA because it failed to maintain documentary evidence indicating that it satisfied the licensure requirements of several states in which it provided services. Defendant also failed to notify OWCP of the fact that it lacked a license in several states.

109. With the above actions, Defendant intended to, and did, deceive the Department of Labor.

110. Defendant is liable for three times the amount of damages created by such false claims made to the federal government.

111. Each and every fraudulent claim is also subject to a civil fine of between five thousand, five hundred dollars and eleven thousand dollars, plus any increase as specified under the law.

## **PRAYER FOR RELIEF**

WHEREFORE, Relators, on their own behalf and on behalf of the United States of America, demand judgment be entered in their favor and against Defendant as follows:

1. That Defendant ceases its violations of the False Claims Act;

2. That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the United States has suffered because of Defendant's actions, plus a civil penalty, as set forth in the FCA, for each violation;

3. That Relators be awarded an amount that the Court decides is reasonable, which shall not be less than fifteen percent and not more than thirty percent of the proceeds or settlement of any related administrative, criminal, or civil actions, including

the monetary value of any equitable relief, fines, restitution, or disgorgement to the United States of America and/or third parties;

4. That the Relators be awarded all costs of this action, including attorney fees and costs pursuant to 31 U.S.C. § 3730(d); and

5. The United States of America and the Relators recover such other relief as the Court deems appropriate.

## JURY DEMAND

Relators demand a trial by jury on all claims so triable.

Respectfully submitted,

**MEZIBOV BUTLER**

/s/ Brian J. Butler
Brian J. Butler (OH No. 0082675)
Susan L. Butler (OH No. 0082811)
615 Elsinore Place
Cincinnati, OH 45202
Phone: 513.621.8800
Fax: 513.621.8833
bbutler@mezibov.com
sbutler@mezibov.com

*Attorneys for Plaintiff*